NATHAN M. SMITH *v.* HARRY E. TAYLOR, JR. ET AL.

[No. 107, September Term, 1978.]

*Decided May 8, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Reuben Bonnett* for appellant.

*David H. Gwynn* for James F. Mundie and Agnes M. Taylor, part of appellees. No brief filed on behalf of Harry E. Taylor, Jr., other appellee.

COLE, J., delivered the opinion of the Court.

The initial question to be decided in the present posture of this case is whether the parties are entitled to appellate review.

Coastal Discount Oil Company, Inc., a Virginia corporation (Coastal), contracted to purchase two parcels of land in Prince George's County upon which it intended to construct a building to house a restaurant. It executed one contract of sale on January 6, 1968 with Thomas B.[1] and Agnes M. Taylor (Taylor) and another on June 26, 1968 with James F. and Mary L. Mundie (Mundie). Coastal agreed to give Taylor and Mundie a first deed of trust secured by the properties in the amounts of $41,750 for the Taylor tract and $40,000 for the Mundie tract. Each contract contained the following provision:

> Said Deed of Trust shall contain a provision that by written approval from the noteholders, the trustees under said deferred purchase money trust, shall execute a subordination agreement subordinating said deferred purchase money to a bona fide construction and/or permanent loan made by a lending institution acceptable to the noteholders.[2]

Settlement of the two land sales took place between November 5 and 7, 1969 at the office of the Lawyer's Title Insurance Corporation (Lawyers Title) in Washington, D.C. Taylor and Mundie delivered deeds to Coastal, and Coastal executed two purchase money notes and two purchase money deeds of trust to secure the notes. Each note was made "[s]ubject to Subordination as fully set out in the Deed of Trust securing this Note."

On November 5, 1969, also at the office of Lawyers Title, Coastal settled on a construction loan which was made by an interim lender, the Madison National Bank/Metropolitan Mortgage Fund, Inc. (Metropolitan) in the amount of $145,000. At that time Coastal executed a deed of trust note payable to Metropolitan for that sum and also executed a deed

---

1. A "suggestion of death" was filed on June 9, 1978 in the Circuit Court for Prince George's County, stating that Thomas B. Taylor died on April 26, 1978, leaving Agnes M. Taylor as the surviving tenant by the entirety with respect to the Prince George's County property.

2. From each contract the parties deleted certain preprinted clauses granting the trustee the right to subordinate without the noteholders' consent.

of trust by which it conveyed the tracts formerly owned by Taylor and Mundie to two trustees, L. W. Richardson and Richmond Moore, Jr.[3] The construction loan was later converted into a permanent loan and the note was purchased by Home Beneficial Life Insurance Company (Home Beneficial). The record indicates that Lawyers Title did not at settlement or at any time prior thereto procure a formal subordination agreement from Taylor or Mundie as called for in their contracts with Coastal.

On November 26, 1969 Lawyers Title recorded with the Clerk of the Circuit Court for Prince George's County the deed of trust securing the construction loan at 10:57 a.m. and the deeds of trust to Taylor and Mundie at 10:58 a.m. Coastal defaulted on the construction loan and the trustee opted to foreclose on the deed of trust. On January 25, 1978 the restaurant property was sold at public auction to the appellant, Nathan M. Smith (Smith), for $134,000. On February 2, 1978 the clerk of the circuit court issued an order *nisi* that the sale be confirmed unless cause to the contrary be shown.

On February 16, 1978, Taylor, Mundie, and David Gwynn, substitute trustee for the Taylor and Mundie deeds of trust, filed exceptions and objections to the sale alleging that Coastal was in default as to their deeds of trust as well. Smith filed an answer to the exceptions and objections to the sale.

On June 12, 1978 the matter came before the circuit court for a hearing, at the conclusion of which, the chancellor refused to ratify the sale, stating:

> All right, gentlemen. I've listened to you very carefully and I am sitting here as a court of equity on whether or not a sale should or should not be ratified. Based on my review of the file and so forth, I feel that equitably the sale should not be ratified, so if someone will give me an order I'm not going to ratify the sale, *and leave the parties to whatever*

---

3. Two trustees have been substituted for Richardson and Moore in the meanwhile, the first being William G. Hancock (Hancock) and the current trustee being Harry E. Taylor, Jr., the appellee.

*respective rights they have in this matter.* [emphasis supplied].

Smith filed an order for appeal on July 10, 1978. We issued a writ of certiorari on December 20, 1978, while the case was still pending in the Court of Special Appeals.

The various arguments made by the parties before this Court all merge into the general question of whether the circuit court erred by refusing to ratify the foreclosure sale. We cannot presently address the merits of this case, however, because we have no jurisdiction to entertain this appeal.

The basis of appellate review in this State in both civil and criminal cases is delineated by statute. *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 394 A. 2d 801 (1978); *Jolley v. State,* 282 Md. 353, 384 A. 2d 91 (1978); *Warren v. State,* 281 Md. 179, 377 A. 2d 1169 (1977); *Eastgate Associates v. Apper,* 276 Md. 698, 350 A. 2d 661 (1976); *Lohss and Sprenkle v. State,* 272 Md. 113, 321 A. 2d 534 (1974). Section 12-301 of the Courts and Judicial Proceedings Article (1974, 1978 Supp.) provides in pertinent part that:

> [e]xcept as provided in § 12-302, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. . . .

The term "final judgment" has been defined by the General Assembly as "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." Maryland Code (1974, 1978 Supp.), § 12-101 (f) of the Courts and Judicial Proceedings Article. Ultimately, however, it is for this Court to decide which judgments or orders are final and thus appealable under § 12-301. *Peat & Co. v. Los Angeles Rams, supra; Warren v. State, supra.* We recently stated that in order for this Court to consider an appeal the "judgment must be so final as to determine and conclude rights involved, or

deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *United States Fire Ins. v. Schwartz,* 280 Md. 518, 521, 374 A. 2d 896, 899 (1977).

Applying this definition to the record in the instant case, it becomes clear that the circuit court never entered any "final judgment." The circuit court neither determined nor concluded the rights involved nor denied Smith means of further prosecuting or defending his rights and interests in the property sold at the foreclosure sale. In fact, the circuit court indicated unequivocally that it was not determining any of the parties' rights. Thus, there is no matter before us which is a final judgment so as to be the proper subject of an appeal. *Commissioner v. Steudl,* 233 Md. 543, 197 A. 2d 432 (1964); *Jeffers v. State,* 203 Md. 227, 100 A. 2d 10 (1953); *Swift v. National Bank,* 69 Md. 232, 14 A. 661 (1888).

While neither party to this appeal made a motion to dismiss, this Court will dismiss an appeal *sua sponte* when it notices that appellate jurisdiction is lacking. *Eastgate Associates v. Apper, supra; Tvardek v. Tvardek,* 257 Md. 88, 261 A. 2d 762 (1970). Since we conclude that there was no final judgment below, Smith's appeal must be dismissed.[4]

*Appeal dismissed; appellant to pay the costs.*

---

4. In order that the issues in this cause may be resolved, we suggest that the chancellor hold any judgment regarding ratification of the sale in abeyance for a reasonable period while the parties seek a determination of their rights and interests through an action for declaratory judgment or other appropriate proceeding.