639 A.2d 1070

COUNTY COUNCIL OF PRINCE GEORGE'S
COUNTY, Maryland

v.

J. Allan OFFEN.

No. 96, Sept. Term, 1993.

Court of Appeals of Maryland.

April 18, 1994.

Joyce Birkel Nichols, Principal Counsel to the District Council, on brief, Sean D. Wallace, Associate County Atty., on brief, Upper Marlboro, for petitioner.

Russell W. Shipley (Arthur J. Horne, Jr., Meyers, Billingsley, Shipley, Rodbell & Rosenbaum, P.A., all on brief), Riverdale, for respondent.

Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

This case presents a challenge to the adoption by the Prince George's County Council, sitting as the District Council (the District Council), of a comprehensive rezoning plan known as a Sectional Map Amendment (SMA). The SMA, among other things, downzoned a piece of property owned by Dr. J. Allan Offen. Offen desired to develop the property, proposing to build a 118,000 square foot "medical mall" facility. When his property was downzoned pursuant to the comprehensive plan, Offen sought judicial review of the District Council's action. The Circuit Court for Prince George's County affirmed the District Council's adoption of the SMA, but the Court of Special Appeals remanded the case to the circuit court for further consideration. We granted Prince George's County's petition for certiorari to review the decision of the intermediate appellate court.

I

The facts giving rise to the present controversy date back almost three decades. In 1966, Dr. J. Allan Offen purchased approximately 17.1 acres of undeveloped land in Prince George's County (the subject property). At the time, the property was zoned R–R (Rural Residential), but in 1969, Offen asked that the land be rezoned for commercial use. On December 30 of that year, the District Council approved his piecemeal zoning request. Approximately half of the subject property was rezoned C–O (Commercial Office) and half was rezoned C–2 (General Commercial–Existing) (the then-equivalent of the present C–S–C Commercial Shopping Center zone, Prince George's County Code (1991, 1992 Supp.), § 27–454). The rezoning was expressly conditioned, however, on the District Council's review and approval of any proposed development or site plan prior to construction.

Shortly after the property was rezoned, the Department of Health and Mental Hygiene in 1970 imposed a sewer moratorium in Prince George's County, prohibiting any expansion of the publicly-provided sewerage system. The State-imposed

sewer moratorium was limited to developments utilizing the public sewerage system; it did not affect a landowner's ability to develop property using private wells and septic systems. The moratorium was lifted in May, 1978.

Ten years after the sewer moratorium was lifted, Offen submitted a conceptual site plan for the subject property which envisioned a 118,000 square foot medical complex. The plan was approved by the District Council on April 11, 1988 with several conditions; among them was a requirement that all development of the property be subject to the approval of a detailed site plan.

Shortly thereafter, Offen requested a change in the water and sewer service category for his property.[1] Specifically, he asked that the property be redesignated from its existing classification of Service Area Four (service available within three to six years) to Service Area Three (immediate priority). The District Council denied Offen's request in November, 1988 and redesignated the property from Service Area Four to Service Area Six (no planned service). Offen sought judicial review of the District Council's action, and in August, 1991, the Circuit Court for Prince George's County reversed the District Council's denial of Offen's request on the ground that the denial was arbitrary and capricious, remanding the case to the District Council and ordering the council to grant Offen's request for redesignation to Service Area Three. The redes-

---

1. State law requires the County to adopt a Ten Year Water and Sewerage Plan delineating certain service areas. Maryland Code (1982, 1993 Repl.Vol.), Title 9, Subtitle 5 of the Environment Article. A property must be classified in the proper category before the Washington Suburban Sanitary Commission (WSSC) will be permitted to build the service lines necessary for development of the property. The established service area categories are:

"1"—lines serving existing community and multi-use systems which exist or are under construction
"2"—lines serving community and multi-use systems which are in final stages
"3"—service is programmed within 2 years
"4"—service is programmed within 3–6 years
"5"—service is programmed within 7–10 years
"6"—no planned service.

ignation was accomplished by the District Council's adoption of an amendment to the Ten Year Water and Sewer Plan on October 29, 1991.

In the meantime, other events were developing. Based on the District Council's 1988 approval of his conceptual site plan, Offen met with various engineers and architects, put together a detailed site plan for the subject property, and submitted it to the Prince George's County Planning Board (Planning Board) for approval as required by the conditions of the 1988 council resolution approving the conceptual site plan.

At the same time, the Planning Board had begun to study and recommend changes to the Master Plan and SMA for that area of Prince George's County in which Offen's property was located. The recommended changes included downzoning of the subject property from its commercial classification to R–A (Residential–Agricultural). The Master Plan was adopted by the Planning Board in September 1990, and after several public hearings, it was approved by the District Council on April 2, 1991.

On May 30, 1991, the Planning Board rejected the detailed site plan Offen had submitted. Because the 1988 approval hinged on the subsequent approval of a detailed site plan, the Planning Board's action effectively prohibited Offen from obtaining building and construction permits until he could win approval for his plan.

Shortly thereafter, on July 15, 1991, the Planning Board transmitted to the District Council a proposed SMA implementing the changes approved in the Master Plan, thereby triggering an automatic stay that prohibited the issuance of building permits until the District Council acted on the proposal. The District Council adopted the SMA in resolution CR–120–1991 on November 26, 1991.

Offen filed a timely Order of Appeal of the District Council's decision in the Circuit Court for Prince George's County and

petitioned the court for review pursuant to then-Maryland Rule B2(e).[2] In his Petition, Offen requested the court to:

1. Reverse the decision of the District Council with respect to the subject property;

2. Remand the SMA back to the District Council to reconsider the decision with respect to the subject property;

3. Declare CB–14–1991 (regarding Sectional Map Amendment revisory petitions) an unconstitutional violation of his due process rights; and

4. Grant whatever additional relief the court may have deemed appropriate.

At oral argument Offen withdrew his constitutional claim, leaving only his request that the adoption of the SMA be reversed and that the SMA be subsequently remanded for reconsideration.

The circuit court affirmed the District Council's decision to adopt the SMA. The trial court first acknowledged that its review of a comprehensive zoning action was limited in scope, and citing *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), it determined that the rezoning contained in the SMA advanced the legitimate interest of preserving the residential character of the neighborhood without denying Offen all beneficial use of his property. The circuit court further found that the District Council's adoption of the SMA was neither arbitrary nor capricious, insofar as the rezoning served a legitimate state interest and Offen possessed no vested rights in the prior zoning classification.

 Offen appealed the decision of the circuit court to the Court of Special Appeals. The intermediate appellate court

---

**2.** The rules governing judicial review of decisions of administrative agencies were initially codified in Subtitle B of Chapter 1100 of the Maryland Rules. The B rules were rescinded effective July 1, 1993 and rules governing judicial review of administrative actions now appear in Title 7, Chapter 200 of the Maryland Rules. The provisions of former Rule B2(e) are now found in Rules 7–202 and 7–207. The new rules apply to all appellate proceedings commenced on or after July 1, 1993, and as far as practicable, to all actions then pending.

held that the SMA, as a comprehensive rezoning, was entitled to a presumption of validity, and that the presumption had not been rebutted. *Offen v. County Council of Prince George's County,* 96 Md.App. 526, 535, 625 A.2d 424, 428 (1993). On the question of whether the downzoning constituted an unlawful taking without just compensation, the Court of Special Appeals "agree[d] with the lower court that [Offen] cannot prevail under vesting principles." *Id.* at 568, 625 A.2d at 445. The court did not stop there, however. It determined that the trial court had "failed to perceive the possible applicability of the zoning estoppel theory," *id.* at 538, 625 A.2d at 430, and that under Md.Rule 8–131(a), the intermediate appellate court could consider the issue even though it had not been raised by the parties or considered by the trial court.[3] *Id.* at 539, 625 A.2d at 430. Stating that it was "most concerned with the County's actions with regard to the 1988 application for a sewer category upgrade, its actions during that litigation, its failure either to appeal the trial court's adverse judgment or to comply with it, and its prior and subsequent conduct," *id.* at 574, 625 A.2d at 448–49, the Court of Special Appeals remanded the case to the circuit court to determine whether the doctrine of "zoning estoppel" applied to the instant case.[4]

---

3. Md.Rule 8–131(a) provides:
 "**Rule 8–131. SCOPE OF REVIEW**
 **(a) Generally.**—The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

4. "Zoning estoppel" is a doctrine under which, according to the jurisdictions that have embraced it, a local government will be estopped from exercising its zoning powers over subject property when a property owner, (1) relying in good faith, (2) upon some act or omission of the government, (3) has made such a substantial change in position or incurred such extensive expenses that it would be manifestly unjust to permit the government to destroy the rights of the property owner by subsequent regulation. David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights in Zoning*

Specifically, the intermediate appellate court asked the trial court to determine "whether the facts ... are sufficient to estop the County from denying the issuance of a [building] permit under the zoning as it was in 1988." *Id.* at 578, 625 A.2d at 450. We granted the County's petition for certiorari on November 2, 1993 in order to consider the intermediate appellate court's remand for consideration of "zoning estoppel," and we will reverse the judgment of the Court of Special Appeals and remand the case to that court with instructions to affirm the circuit court.[5]

## II

■ We begin our analysis with the recognition that judicial review of a comprehensive zoning action is limited in scope.

*Disputes*, Urb.L.Ann. 63, 66 (1971). We have never considered whether the doctrine should be applied in Maryland, and because of the limited scope of review of this case, we need not do so today.

5. Although not directly relevant to the issue before this Court, we note that Offen has pursued parallel litigation in the federal courts. In addition to his state court litigation, Offen filed a three-count complaint in the U.S. District Court for the District of Maryland arising out of the same facts underlying the case *sub judice*. In his federal complaint, Offen alleged that the actions of Prince George's County deprived him of a property right in violation of the Due Process Clause of the United States Constitution; that the rezoning of his property was a taking without just compensation pursuant to the Fifth and Fourteenth Amendments; and that the County engaged in a civil conspiracy to prevent Offen's development of the site (this third count was a pendent state law claim). The district court dismissed Offen's complaint on February 1, 1993. It held that Offen's claim for relief was barred by res judicata, because his previous claim for damages based on the County's refusal to change his water and sewer status had been dismissed with prejudice by the Circuit Court for Prince George's County. The court also determined that Offen could not pursue a claim for damages under 42 U.S.C. § 1983 because he possessed no vested rights in the commercial zoning classification under state law. The district court dismissed the takings claim on the ground that Offen had failed to exhaust his administrative remedies, and it declined to address Offen's state law conspiracy claim for lack of an independent basis for subject matter jurisdiction.

Offen appealed the district court's decision, and on August 24, 1993, the United States Court of Appeals for the Fourth Circuit affirmed the judgment of the district court in an unpublished per curiam opinion.

The case at bar is a limited review of an action of an administrative agency, specifically, the adoption of the SMA by the District Council. Absent specific statutory authority, judicial review of administrative agency actions is grounded in the doctrine of the separation of powers, and "[i]n those instances where an administrative agency is acting in a manner which may be considered legislative in nature (quasi-legislative), the judiciary's scope of review of that particular action is limited to assessing whether the agency was acting within its legal boundaries." *Department of Nat. Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 221–24, 334 A.2d 514, 521–24 (1975); *see also Judy v. Schaefer,* 331 Md. 239, 265–66, 627 A.2d 1039, 1052–53 (1993) (noting limited scope of review when agency action is legislative, as opposed to adjudicatory or quasi-judicial, in nature).

Offen has conceded that the SMA constitutes a comprehensive, as opposed to a piecemeal, zoning plan. Our decisions have consistently recognized that appellate review of a comprehensive rezoning is limited in scope. We explained in *Ark Readi–Mix Concrete Corp. v. Smith,* 251 Md. 1, 4, 246 A.2d 220, 221–22 (1968), that "zoning is a legislative function, and . . . [w]hen a comprehensive map designed to cover a substantial area is adopted, it is entitled to the same presumption of correctness as an original zoning." This presumption of correctness is particularly difficult for a property owner to overcome:

> "For an individual property owner to escape the binding impact of a comprehensive rezoning he must show that the plan lacks the necessary relationship to the general public interest and welfare that is presumed or that the effect of the plan is to deprive him of any reasonable use of his property."

*Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 67, 254 A.2d 700, 705 (1969). *See also Howard County v. Dorsey,* 292 Md. 351, 362–63, 438 A.2d 1339, 1346 (1982); *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 706–07, 376 A.2d 483, 495 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S.Ct.

1245, 55 L.Ed.2d 769 (1978); *County Council v. District Land Corp.,* 274 Md. 691, 701–02, 337 A.2d 712, 718 (1975); *Montgomery County v. Leizman,* 268 Md. 621, 631–33, 303 A.2d 374, 379–80 (1973). Applying this standard, the circuit court in the case *sub judice* found "no legal basis in the record . . . to take issue with the judgment of the County Council sitting as the District Council [in its] adoption of the SMA," a finding which, with the exception of the zoning estoppel issue, was affirmed by the intermediate appellate court.

▬▬▬ The scope of review of the instant case by this Court is even more limited. We granted the County's petition for certiorari to consider the intermediate appellate court's invocation of the doctrine of zoning estoppel. In reviewing a decision rendered by the Court of Special Appeals, this Court ordinarily will consider only issues raised in the petition for certiorari or in a cross-petition. *Batson v. Shiflett,* 325 Md. 684, 700–01, 602 A.2d 1191, 1199 (1992); Md.Rule 8–131(b)(1). Offen filed no cross-petition, and before this Court he challenges neither the validity of the SMA nor the determination that he lacked vested rights in the commercial zoning. These issues, therefore, are not before us. The sole question before us is whether the Court of Special Appeals was correct in raising the collateral issue of zoning estoppel and, on the basis of that discussion, remanding this case to the circuit court for application of that doctrine.

▬▬▬ Like this Court and the circuit court, the Court of Special Appeals was also bound by a limited scope of review. Ordinarily, an appellate court will consider only those issues that were raised or decided by the trial court, unless the issue concerns the jurisdiction of the court to hear the matter. Md.Rule 8–131(a); *Moats v. City of Hagerstown,* 324 Md. 519, 524–25, 597 A.2d 972, 974–75 (1991); *Yarema v. Exxon Corp.,* 305 Md. 219, 231 n. 9, 503 A.2d 239, 245 n. 9 (1986); *Smith v. Taylor,* 285 Md. 143, 147, 400 A.2d 1130, 1133 (1979). We have recognized on occasion that an appellate court possesses discretion to consider matters that were not relied upon by the trial judge, or perhaps not even raised by the parties. *State v.*

*Bell,* 334 Md. 178, 187, 638 A.2d 107, 112 (1994); *Atlantic Mutual Ins. Co. v. Kenney,* 323 Md. 116, 122, 591 A.2d 507, 510 (1991); *Crown Oil v. Glen Const. Co. of Va., Inc.,* 320 Md. 546, 561, 578 A.2d 1184, 1191 (1990). This discretion, however, is not unbridled. Rule 8–131(a) provides that an appellate court may decide an issue not raised below "if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." We have said that the primary purposes of Rule 8–131(a) are "(a) to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings, and (b) to prevent the trial of cases in a piecemeal fashion, thus accelerating the termination of litigation." *Clayman v. Prince George's County,* 266 Md. 409, 416, 292 A.2d 689, 693 (1972) (citations omitted). We have also recognized that, "because of important public policy considerations, there is a limited category of issues, in addition to jurisdiction, which an appellate court ordinarily will address even though they were not raised by a party." *Moats,* 324 Md. at 525, 597 A.2d at 975 (including exhaustion or exclusivity of administrative remedies within that limited category); *Joseph H. Munson Co., Inc. v. Secretary of State,* 294 Md. 160, 169, 448 A.2d 935, 940 (1982) (standing of party may be within limited category), *aff'd,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Similarly, an appellate court might raise an issue *sua sponte* in a situation in which a lower court decided a case correctly but reached its result through faulty analysis. Under those circumstances, we will ordinarily affirm the lower court on an alternative ground provided the record is adequate to support that ground. *Temoney v. State,* 290 Md. 251, 429 A.2d 1018 (1981); *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980). It must be kept in mind, however, that these examples represent exceptions to the general rule that an appellate court will not address matters that were not raised or decided in the trial court; as such, they are not to be applied haphazardly. A court should not, for example, exercise its discretion to

consider an issue raised for the first time on appeal if to do so would unfairly prejudice the parties. *State v. Bell,* 334 Md. at 189, 638 A.2d at 113. If an issue does not fall within a common exception to the general "raise or waive" rule, an appellate court should weigh carefully whether its consideration of an issue not raised in the lower court is in fact "necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal" before it exercises its discretion under Rule 8–131(a).

In the case *sub judice,* we believe that the exercise of Rule 8–131(a) discretion by the Court of Special Appeals was improper. We fail to see how the intermediate appellate court's raising of the issue of zoning estoppel will serve as a guide to the trial court or avoid the expense and delay of another appeal. Remanding the case requires at the very least the additional expense and delay of subsequent proceedings in the circuit court. Furthermore, because there is no established law of zoning estoppel in this state, it is readily foreseeable that the losing party will appeal, frustrating the goal of avoiding the expense and delay of another appeal. Similarly, the goal of providing guidance to the trial court is not served by the intermediate appellate court's decision. That court agreed with the circuit court that, on the basis of existing law, the SMA is valid and Offen failed to demonstrate any vested rights in the commercial zoning classification. Its opinion provides no clear guidance for the trial court in applying the doctrine of zoning estoppel; to the contrary, the case would be one of first impression in this state, and the intermediate appellate court concedes that "[i]t is thus unclear to what extent the doctrine exists or should exist in Maryland." *Offen,* 96 Md.App. at 569, 625 A.2d at 446.

Aside from facing the practical difficulties of applying a doctrine which has been neither briefed, argued, nor adopted in this jurisdiction, the trial court on remand would be instructed to apply a doctrine that is beyond the proper scope of review of an administrative action. The instant case remains one of narrow scope; this action simply challenges the validity of the District Council's adoption of the SMA. In contrast, the crux of the zoning estoppel theory as explained by the

Court of Special Appeals rests in a challenge to collateral proceedings (e.g., denial of the requested upgrade in sewer status, removal to federal court of the subsequent action challenging that denial, alleged delay in complying with the order to grant the upgrade, etc.) that allegedly frustrated Offen's ability to obtain a building permit and thereby vest his rights in the commercial zoning of his property. These issues may be valid, and they may perhaps be raised and considered in a different type of proceeding, but they are not properly raised here. The collateral proceedings did not form a basis for the enactment of the SMA, and unless they undermine the validity of the SMA itself, they are not properly before either the circuit court or the appellate court in a review of the District Council's administrative action.

Under the circumstances of this case, we hold that the Court of Special Appeals abused its discretion under Md.Rule 8–131(a) in raising, *sua sponte,* the doctrine of zoning estoppel, an issue that is a matter of first impression in Maryland, that had been neither briefed nor argued in either the trial court or in the intermediate appellate court, and that was beyond the scope of appellate review of an administrative action.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*