*John Matthew Woodlin v. State of Maryland*, No. 107, September Term 2021, filed May 31, 2022. Opinion by Friedman, J.

**HEADNOTES:**

CRIMINAL LAW — EVIDENCE — OTHER SEXUALLY ASSAULTIVE BEHAVIOR — BALANCING PROBATIVE VALUE AND PREJUDICIAL EFFECT

When determining whether "[t]he probative value of the evidence is not substantially outweighed by the danger of unfair prejudice" under CJ § 10-923(e)(4), courts must consider whether and how similar the two instances of sexually assaultive behavior actually are. The more similar the prior sexually assaultive behavior is to the charged offense, the more probative of propensity it is, and the less unfairly prejudicial. Conversely, the more dissimilar the prior sexually assaultive behavior is to the charged offense, the less probative of propensity it is, and the more unfairly prejudicial.

CRIMINAL LAW — EVIDENCE — OTHER SEXUALLY ASSAULTIVE BEHAVIOR — BALANCING PROBATIVE VALUE AND PREJUDICIAL EFFECT

While the precise contours of how much evidence of prior sexually assaultive behavior should be admitted must be decided on a case-by-case basis by circuit courts, it is insufficient merely to admit the fact of the prior conviction. Instead, circuit courts must admit sufficient factual detail of the prior sexually assaultive behavior to allow the jurors to compare and contrast the current allegations with the prior sexually assaultive behavior to determine for themselves whether and to what extent the prior sexually assaultive behavior is probative—or not—as to whether the defendant committed the act for which they are on trial.

Circuit Court for Wicomico County
Case No. C-22-CR-19-000613

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 107

September Term, 2021

_____

JOHN MATTHEW WOODLIN

v.

STATE OF MARYLAND

_____

Friedman,
Shaw,
Wilner, Alan M.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Friedman, J.

_____

Filed: May 31, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case concerns the application of Section 10-923 of the Courts Article of the Maryland Code, a new evidentiary statute enacted by the Maryland General Assembly to permit, in certain circumstances, the admissibility of evidence of prior sexually assaultive behavior in the prosecution of sex crimes.

John Woodlin was convicted of child sexual abuse and related sexual offenses arising from a 2019 incident involving his then eleven-year-old grandson, A.H.[1] Although evidence against Woodlin included testimony from A.H. and other family members, a critical piece of the State's case, and the focus of this appeal, was evidence of Woodlin's 2010 conviction for another sexual assault. The arguments before us on appeal are two-fold: *first*, that the allegations of the 2010 conviction are so dissimilar from those of the 2019 incident that they ought not be admissible; and *second*, that the evidence that the State used to prove Woodlin's 2010 conviction was too "salacious" to be admissible. In addition to disputing each of these arguments on their merits, the State also argues that Woodlin waived the latter complaint by not raising it at trial.

As to Woodlin's first argument—that his 2010 conviction was too dissimilar to be admissible—we will hold that while there were both similarities and dissimilarities between the two offenses, the motions court did not abuse its discretion in admitting evidence of the prior sexual assault. As to Woodlin's second argument—that once the 2010 conviction was determined to be generally admissible, the evidence that the State actually

---

[1] To protect the privacy of the minor victim in this case, the initials "A.H." have been chosen at random. Neither A.H.'s given name, nor his surname, begins with these letters.

introduced was too "salacious" to be admissible—we will hold that Woodlin waived this argument by failing to preserve it below. Nevertheless, we will provide some comment to explain our view that the General Assembly did not intend to allow the admissibility of only a mere "bare-bone[s]" reporting of the prior sexually assaultive behavior, but to allow the admission of sufficient evidence from which jurors can reasonably compare and contrast the current allegations to the prior. We, therefore, affirm Woodlin's convictions.

**FACTS**

On September 13, 2019, Woodlin spent the night at the home of his daughter and her family, including Woodlin's eleven-year-old grandson, A.H. After everyone went to bed, Woodlin went upstairs to A.H.'s room. At trial, A.H. testified that Woodlin touched his "private parts," pulled down A.H.'s underwear, and put his mouth on A.H.'s penis while he held A.H. by the arm and had his hand over A.H.'s mouth. According to A.H., Woodlin also put his fingers on and licked A.H.'s buttocks. A.H.'s mother testified that Woodlin left the home sometime during the night and called her the next morning crying, claiming that A.H. had touched *him* sexually and was "trying to get him locked up." A.H. later told his aunt what had happened, triggering the investigation that followed.

When questioned by local police, Woodlin denied having been inside his daughter's home that night or ever having spent the night there. Woodlin also denied having had any contact with A.H. in years and specifically denied having had any sexual contact with him. Woodlin was arrested and charged with child sexual abuse and related sexual offenses.

Before trial, the State filed a timely motion of intent to introduce evidence of a prior conviction for sexual assault under Section 10-923 of the Courts and Judicial Proceedings

2

("CJ") Article, seeking to admit evidence that in 2010 Woodlin pleaded guilty to a third-degree sexual assault. Pursuant to CJ § 10-923(d), the court held a hearing. Over Woodlin's objection, the motions court ruled that the evidence would be admissible. At trial, among other evidence, the State offered, and the court admitted, the testimony of the police officer who investigated the 2010 offense, a certified copy of Woodlin's 2010 conviction, and substantial portions of the transcript of Woodlin's 2010 guilty plea proceedings.[2] The jury ultimately convicted Woodlin of child sexual abuse and related offenses. Woodlin subsequently filed this timely appeal.

---

[2] The full transcript introduced at the pretrial hearing was thirty-three pages long and included references of up to three other criminal charges against Woodlin that do not relate to the 2010 sexual offense or otherwise fall under the exception provided by CJ § 10-923. *First*, the transcript mentions in four places that at the same time Woodlin pleaded guilty to the 2010 sexual offense, he also pleaded guilty to a charge of reckless endangerment arising out of a different incident. *Second*, the transcript mentions in two places that in exchange for Woodlin' guilty plea, the State dismissed a third charge "of a theft-related nature," also arising out of a different incident. *Third*, the transcript includes a brief discussion about Woodlin already being "on some type of probation or parole when these events happened," thus raising the prospect that he had been convicted of a third unrelated crime. Before offering the transcript into evidence at trial, however, the State redacted eleven pages, which included, among other things, details of the reckless endangerment charge against Woodlin and what may have been the underlying crime for which Woodlin was on probation at the time of the 2010 charges. As a result, the jury had access to a detailed description of the 2010 sexual assault, but no details about the other unrelated charges. The remaining parts of the transcript that were introduced at trial refer only to the fact of Woodlin's conviction for reckless endangerment, the fact that he was also charged with theft but that the charge was dismissed in exchange for Woodlin's guilty plea, and the fact that Woodlin had otherwise violated probation or parole. Because we are concerned here with what the jury saw, references throughout the rest of this opinion to the "transcript" are to the redacted version that was introduced at trial.

3

## CJ § 10-923

Because this is among the first convictions to reach the appellate courts using evidence made admissible by virtue of CJ § 10-923, and because of its centrality to the issues presented, we will begin with an overview of this new statute.

It is a fundamental principle of our jurisprudence that evidence that "tends to show that the accused committed another crime independent of that for which [the accused] is on trial, even one of the same type, is inadmissible." *Hurst v. State*, 400 Md. 397, 407 (2007). Evidence of prior crimes is considered propensity evidence in that it suggests that the defendant is the type of person who has the propensity to commit this type of crime. Thus, evidence of prior crimes was prohibited by the traditional common law rules of evidence and, when the Court of Appeals codified our rules of evidence, this prohibition was included as Rule 5-404(b), which provides that "[e]vidence of other crimes, wrongs, or other acts … is not admissible to prove the character of a person … to show action in conformity therewith." MD. R. 5-404(b). Despite this general rule, however, both the common law and the Maryland Rules permit the admission of evidence of prior crimes or other bad acts in cases in which the evidence is found to have "special relevance" to a contested issue in the case, *Hurst*, 400 Md. at 407-08, such as proof of "motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake or accident." MD. R. 5-404(b).

In 2018, the General Assembly adopted CJ § 10-923. Acts of 2018, chs. 362, 363. This new law changes the rules of evidence and makes admissible evidence that was

4

previously inadmissible regarding prior sexually assaultive behavior.[3] As is often the case in Maryland statutory law, the gravamen of the statute is found in subsection (b),[4] which provides that when a defendant is on trial for sexual crimes or sexual abuse, evidence of prior "sexually assaultive behavior" can be admissible.[5] CJ § 10-923(b). Subsection (a) defines "sexually assaultive behavior" as (1) all Maryland sexual crimes; (2) sexual abuse of a minor; (3) sexual abuse of a vulnerable adult; (4) federal sexual abuse crimes; and (5) equivalent sexual crimes in other jurisdictions. CJ § 10-923(a). Subsection (c) requires that the State file a motion of intent to introduce evidence of prior sexually assaultive

---

[3] Under the Maryland Constitution, the General Assembly and the Court of Appeals share responsibility for the rules of practice and procedure in Maryland courts. MD. CONST., Art. IV, § 18(a) ("The Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise *by law*.") (emphasis added); *Murphy, et al. v. Liberty Mutual Insurance Co.*, ___ Md. ___, No. 005, Sept. Term 2021, Slip Op. at 2-3 (Apr. 27, 2022); *see also Johnson v. Swann*, 314 Md. 285, 289-90 (1988) (noting both that "the legislature may rescind, change, or modify a rule promulgated by the Court of Appeals," and that a Rule will supersede an inconsistent prior-enacted statute unless and until a subsequent statute repeals or modifies the Rule). Thus, while the Court of Appeals drafted Rule 5-404(b), the General Assembly was acting within its power to modify that Rule by law, which it did in adopting CJ § 10-923. The Court of Appeals, as is its right, then chose to revise Rule 5-404(b) to conform to CJ § 10-923.

[4] *See* DEP'T OF LEG. SERV., MARYLAND STYLE MANUAL FOR STATUTORY LAW ch. 16 at 63 (Oct. 2018) (representing that in the standard organization of a statute, "definitions" and "rules of construction" ordinarily appear before "legislative policy"); *see also id.* ch. 9 at 33 (requiring placement of definitions "at the beginning of the smallest statutory unit").

[5] Because the sexually assaultive behavior at issue here occurred prior to the 2019 incident giving rise to the current charges, we refer throughout this opinion to "*prior* sexually assaultive behavior." We note, however, that the statute allows for the admission of "*other* sexually assaultive behavior" which can occur either before or after the charged offense. CJ § 10-923(b).

5

behavior. In the motion, the State must describe the evidence it intends to rely on to prove the prior sexually assaultive behavior. CJ § 10-923(c). And subsection (d) requires the court to hold a hearing as to the admissibility of the evidence of the prior sexually assaultive behavior. CJ § 10-923(d). Finally, subsection (e) allows the court to admit evidence of that prior sexually assaultive behavior if the court finds and states on the record that:

(1)     The evidence is being offered to:
    (i)     Prove lack of consent; or
    (ii)    Rebut an express or implied allegation that a minor victim fabricated the sexual offense;

(2)     The defendant had an opportunity to confront and cross-examine the witness or witnesses testifying to the sexually assaultive behavior;

(3)     The sexually assaultive behavior was proven by clear and convincing evidence; and

(4)     The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

CJ § 10-923(e). The fourth element of the test—that the "probative value … is not substantially outweighed by the danger of unfair prejudice"—appears to us consciously to echo identical language in Rule 5-403.[6] Absent evidence to the contrary, we assume that the General Assembly intended also to invoke the existing body of case law interpreting this phrase.[7]

_____

[6] The text of Rule 5-403 provides: "Although relevant, evidence may be excluded if its *probative value is substantially outweighed by the danger of unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MD. R. 5-403 (emphasis added).

[7] The legislative history of CJ § 10-923 further supports our conclusion that the General Assembly intended for us to interpret the phrase "probative value is [not] substantially outweighed by the danger of unfair prejudice" to mean the same thing in CJ

**DISCUSSION**

As noted above, Woodlin's appeal requires us to consider two primary issues regarding the application of CJ § 10-923 to his case: (1) whether his 2010 conviction was sufficiently similar to the charged offense so as to allow its admission; and (2) whether the evidence used to prove the 2010 conviction was too "salacious" to be admitted.[8]

## I. SUFFICIENT SIMILARITY

Pursuant to CJ § 10-923(c), the State filed a timely motion of intent to introduce evidence of Woodlin's 2010 conviction. In that motion, the State indicated that it intended to prove the 2010 conviction through the testimony of the investigating police officer, a certified copy of the conviction, and the transcript of Woodlin's guilty plea proceedings. The motions court held a pretrial hearing, pursuant to CJ § 10-923(d), at which the State identified that in 2010 Woodlin pleaded guilty to third-degree sexual assault for inserting

---

§ 10-923(e)(4) as it means in Rule 5-403. For example, Senate Bill 270 (which became CJ § 10-923) initially required that "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." 2018 S.B. 270 First Reader (Jan. 22, 2018), available at https://perma.cc/46LM-BRVR. The bill was amended to instead require that "evidence meets the requirements of Maryland Rule 5-403." 2018 S.B. 270 Third Reader (Mar. 14, 2018), available at https://perma.cc/JP52-MTNS. As noted *supra* n.6, Rule 5-403 contains the same language. Finally, the bill was amended back to the original language. 2018 House Judiciary Committee Amendments to S.B. 270 (Mar. 27, 2018), available at https://perma.cc/68CF-YGU5. Although the General Assembly appears to have considered and reconsidered *how* to draw the connection between CJ § 10-923(e)(4) and Rule 5-403, we gather that a connection was intended.

[8] Woodlin's brief presents just one question on appeal: "Did the trial court [abuse] its discretion in admitting into evidence the facts and details surrounding [Woodlin's] 2010 conviction for third degree sexual offense under [CJ] § 10-923?" Because we find it necessary to treat the admission of the facts of Woodlin's 2010 conviction separately from the admission of the allegedly "salacious" detail, we have rephrased Woodlin's one question as two.

a broomstick handle and vacuum hose into the rectum of an unconscious man. At that pretrial hearing, Woodlin argued that for evidence of prior sexually assaultive behavior to have probative value, and therefore be admissible under CJ § 10-923, it must be similar to the offense charged. Woodlin further argued that evidence of his 2010 conviction was so dissimilar from the alleged 2019 offense against A.H. that any probative value was substantially outweighed by the danger of unfair prejudice, and that the evidence was, therefore, inadmissible.[9] In response, the State argued that there is no requirement that the two offenses be similar in nature, and that even if there were such a requirement, the two offenses here were sufficiently similar that the probative value was *not* outweighed by the danger of unfair prejudice. The motions court agreed with the State and found on the record that the prerequisites of section 10-923 were satisfied, including that "the nature of th[e 2010] offense … is consistent enough with the offense here … that the probative value is not substantially outweighed by the danger of unfair prejudice." It is this finding under CJ § 10-923(e)(4) that Woodlin challenges on appeal.

As a legal matter, we must first determine what role the similarity or dissimilarity between the offenses plays in balancing probative value against the danger of unfair prejudice. Only then, as a factual matter, can we determine whether the probative value of evidence of Woodlin's 2010 conviction was substantially outweighed by the danger of

---

[9] At the pretrial hearing, and again at trial, Woodlin also argued that because he pleaded guilty in 2010 rather than go to trial, he hadn't "had an opportunity to confront and cross-examine the witness or witnesses testifying to the sexually assaultive behavior," as is required by CJ § 10-923(e)(2). Woodlin did not argue this issue on appeal, however, so we do not reach it here.

unfair prejudice. In doing so, we are mindful that we review the motions court's decision balancing these competing interests for abuse of discretion. *Wagner v. State*, 213 Md. App. 419, 454 (2013) (citing *State v. Simms*, 420 Md. 705, 725 (2011) (applying abuse of discretion standard when reviewing a trial court's balancing of the probative value of evidence against the danger of unfair prejudice under Rule 5-403). As we have often explained:

> A ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. Rather, the decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*Wagner*, 213 Md. App. at 454 (cleaned up).

As in the context of Rule 5-403, courts determining whether to admit evidence of prior sexually assaultive behavior must engage in a balancing of "the proponent's need to introduce the challenged evidence against the danger that this evidence would unfairly prejudice the party objecting to it." JOSEPH F. MURPHY, JR. & ERIN C. MURPHY, MARYLAND EVIDENCE HANDBOOK § 506[B] at 229 (5th ed. 2020). In so doing, the question is not simply whether the evidence results in prejudice to the defendant, but rather whether the danger of *unfair* prejudice *substantially* outweighs any probative value:

> [E]vidence is never excluded merely because it is "prejudicial." If prejudice were the test, no evidence would ever be admitted. The parties have a right to introduce prejudicial evidence. Probative value is outweighed by the danger of "*unfair*" prejudice when the evidence produces such an emotional response that logic cannot overcome prejudice or sympathy needlessly injected into the case.

9

MURPHY & MURPHY, § 506[B] at 230; *see also* 5 LYNN MCLAIN, MARYLAND EVIDENCE, STATE & FEDERAL § 403:1(b) at 650-51 (3d ed. 2013).

A.     Similarity Under CJ § 10-923(e)(4)

The first question we must address on appeal is what role the similarity or dissimilarity of the offenses plays in balancing probative value against the danger of unfair prejudice under CJ § 10-923(e)(4). Woodlin argues that "similarity or dissimilarity of the prior offense to the crime for which the defendant is on trial is critical to a determination of whether the probative value of the prior crime substantially outweighs its danger of undue prejudice, and hence to its admission." For its part, the State argues that CJ § 10-923 does not *require* that the two offenses be "of a substantially similar nature," but nonetheless concedes that similarity is a factor that courts may consider when balancing probative value and the danger of unfair prejudice.

We hold that the similarity or dissimilarity of the offenses is relevant to the question of admissibility under CJ § 10-923(e)(4). Courts must consider whether and how similar the two instances of sexually assaultive behavior actually are when determining whether "[t]he probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." CJ § 10-923(e)(4). The more similar the prior sexually assaultive behavior is to the charged offense, the more probative of propensity it is, and the less unfairly prejudicial. Conversely, the more dissimilar the prior sexually assaultive behavior

10

is to the charged offense, the less probative of propensity it is, and the more unfairly prejudicial.[10]

B.      Similarity Between Woodlin's 2010 Conviction and the 2019 Allegations

Having determined that the question of similarity is necessarily a part of the balancing between probative value and unfairly prejudicial effect under CJ § 10-923(e)(4), we further hold that the facts of Woodlin's 2010 conviction and the 2019 allegations involving A.H. were sufficiently similar that the motions court's decision to admit the 2010 conviction did not constitute an abuse of discretion. The motions court acknowledged its duty to balance the competing interests and heard arguments from the parties on the relative value and danger of admitting the evidence. The motions court recognized that there were differences between the two offenses but focused on the lack of consent in both, ultimately

---

[10] We stop short, however, of engrafting onto this balancing test a requirement that courts consider a set list of factors, as Woodlin urges us to do. In enacting CJ § 10-923, the General Assembly considered but then deleted language that would have imposed a factor-specific rule. *Compare* 2018 H.B. 301 First Reader (Jan. 22, 2018), available at https://perma.cc/LJ8N-75UR (requiring courts to consider the following: "(1) [w]hether the issue for which the evidence of the sexually assaultive behavior is being offered is in dispute; (2) [t]he similarity between the sexually assaultive behavior and the sexual offense for which the defendant is on trial; (3) [t]he closeness in time of the sexually assaultive behavior and the sexual offenses for which the defendant is on trial; and (4) [t]he independence of the sexually assaultive behavior from the sexual offense for which the defendant is on trial"), *with* 2018 H.B. 301 Third Reader (Mar. 13, 2018), available at https://perma.cc/73JA-GNGV (omitting these factors). Given the General Assembly's conscious choice to omit a set list of factors it would be inappropriate for us to do that which the General Assembly specifically rejected. Moreover, in our view, given the operation of Article IV, § 18(a) of the Maryland Constitution, if there is to be a modification of the rules of practice and procedure, it must come from the Court of Appeals, not an inferior tribunal. *See supra* n.3.

determining that the 2010 offense "is consistent enough with the offense here [that] the probative value is not substantially outweighed by the danger of unfair prejudice."

Our review of the record reveals that there was evidence to support both sides of this argument. On the one hand, as the State argued, the 2010 offense and the 2019 offense could reasonably be characterized as similar because both involved vulnerable, male victims who were unable to consent, and both involved an "assault on the victim's anal area." On the other hand, as Woodlin argued, the two offenses could also reasonably be characterized as dissimilar because one involved an adult victim incapable of consent because he was unconscious while the other involved a child victim incapable of consent because of his age, and one involved anal penetration with foreign objects while the other involved anal touching and licking. Given the evidence on both sides, we cannot say that the motions court's decision to put the evidence to the jury was "well removed from any center mark" or "beyond the fringe of what [we deem] minimally acceptable." *Wagner*, 213 Md. App. at 454. We, therefore, hold that the motions court did not abuse its discretion in admitting evidence of Woodlin's 2010 conviction.[11]

---

[11] This is not to suggest, of course, that *any* other sexually assaultive behavior is probative of a defendant's propensity to commit *any* other sexual assault. There may indeed be cases where offenses are so dissimilar that any probative value would be substantially outweighed by the danger of unfair prejudice. Moreover, in this case, there was limited evidence on which to base the determination. In future cases, expert testimony may help to establish a more robust basis for determining similarities and dissimilarities, especially in matters outside the courts' experience and comfort, such as the likely comorbidity of the paraphilias involved.

## II.   ALLEGEDLY "SALACIOUS" DETAIL

Woodlin's second argument on appeal assumes that even if the fact of his prior conviction is admissible, the trial court nevertheless abused its discretion by admitting "the inflammatory and dissimilar parts of that conviction which were not at all relevant to [the allegation] but were sure to rouse the jury's hostility." According to Woodlin, the police officer's testimony and the guilty plea transcript contained "salacious" detail about the prior sexual assault that "should have been excluded from the trial testimony and … redacted from any transcript presented to the jury." The State, for its part, argues that Woodlin waived this argument by not seeking at the motions hearings or during trial to limit the evidence to be admitted. Even if the argument was not waived, the State argues that the evidence presented was not unfairly prejudicial.

Pursuant to CJ § 10-923(c), the State included with its motion of intent a description of the evidence it planned to introduce to prove the conviction: testimony from the investigating police officer; a certified copy of the conviction; and the transcript from the guilty plea hearing. The certified copy of Woodlin's conviction is brief, simply listing the plea, disposition, and sentence for each charge as well as the associated docket entries. The police officer's testimony, too, was, as the State characterizes it, "brief and bare-bone[s]." At the 2019 trial, the totality of the police officer's testimony about the 2010 sexual assault was as follows:

| | |
|---|---|
| STATE: | Can you tell us what your investigation revealed? |
| DEF. COUNSEL: | I object. |
| THE COURT: | Overruled. |

13

| | |
|---|---|
| OFFICER: | The investigation concluded that [Woodlin] had sexual contact with another male individual, had placed, I believe, a broomstick and a vacuum hose inside the individual's rectum while he was unconscious by some form of intoxicant or another. |
| STATE: | And this was an adult male? |
| OFFICER: | Yes, ma'am. |
| STATE: | Was there photographic evidence of this that was recovered as part of your investigation? |
| OFFICER: | Yes, ma'am, from -- |
| DEF. COUNSEL: | I object. |
| THE COURT: | Overruled. |
| OFFICER: | From [Woodlin]'s cell phone. |

No more detail about the assault was provided. By contrast, twenty-two pages of the transcript from the guilty plea proceeding were admitted at the 2019 trial, including four pages of potentially prejudicial details about the 2010 assault, such as: (1) details of the victim's injuries, including that "there was trauma to the rectal area and … severe bruising in the hips and back area" requiring the victim to be flown to Shock Trauma; (2) Woodlin's statement to a witness "that he was 'going to get that asshole,' referring to [the victim's] rectum";[12] (3) statements from a witness to events after the assault, including that she believed that Woodlin "had assaulted [the victim] prior to this one occasion"; and

---

[12] We note that although the transcript says that when Woodlin said he was "going to get that asshole" the witness understood him to mean the victim's rectum, we aren't quite convinced and think he may just have meant it in its derogatory slang meaning, as if he said, "I'm going to get that jerk." We need not resolve that conflict.

(4) statements from the victim that he believed Woodlin "must have put pills into his drink."

The record shows that Woodlin was provided the transcript of the 2010 guilty plea proceeding in advance of the pretrial hearing, at the pretrial hearing, and again when it was entered as evidence at trial. Despite having access to what he now calls "inflammatory and dissimilar [facts that] were not at all relevant … but were sure to rouse the jury's hostility," Woodlin failed to bring either the motions or trial court's attention to this "salacious" detail that he now claims the motions court and the trial court should have limited or redacted. We will, therefore, agree with the State and find that Woodlin waived this argument. Moreover, even if Woodlin had properly preserved the argument, we would find that neither the motions court nor the trial court abused its discretion in admitting the details that they did. We explain.

A.     Failure to Preserve

Under Maryland Rule 8-131(a), "[o]rdinarily, [this] court will not decide any … issue unless it plainly appears by the record to have been raised in or decided by the trial court." MD. R. 8-131(a). The purpose of this rule of preservation is, in part, "to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Robinson v. State*, 404 Md. 208, 216-17 (2008). Under the contemporaneous objection rule, "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived." MD. R. 4-323(a). When, as here, an objection is initially raised in a

15

pretrial motion, and the pretrial ruling results in the admission of evidence, the objection must be renewed at trial to preserve the issue for appeal. *Reed v. State*, 353 Md. 628, 643 (1999). While a general objection to evidentiary issues is sufficient to preserve all grounds of appeal on that objection, *Cousar v. State*, 198 Md. App. 486, 511 n.18 (2011), once a general objection to the admission of evidence is overruled, a party seeking to redact or otherwise limit the scope of the evidence admitted must "raise the issue to the judge." *Belton v. State*, 152 Md. App. 623, 634 (2003) (holding that the trial court did not err in playing an audiotape in its entirety when the defendant failed to request a redaction or limitation after his general objection to the admission of the tape was overruled); *see also Colkley v. State*, 251 Md. App. 243, 282-83 (2021) (holding that "general objections will not suffice" to properly raise the issue of redaction); *Streater v. State*, 352 Md. 800, 824-25 (1999) (Raker, J., dissenting) (finding it unfair to require a trial judge to, *sua sponte*, recognize that a generally admissible document contains potentially inadmissible parts). *But see Streater*, 352 Md. at 805 n.4 (presuming that petitioner's objection to the document as a whole was sufficient to preserve objection to its potentially inadmissible parts because Court of Appeals denied certiorari on question of preservation).

Here, Woodlin never raised the issue of redaction or otherwise limiting the scope of the evidence admitted to the pretrial motions judge. Instead, his pretrial objections focused on the general admissibility of any evidence of the 2010 offense. Later, Woodlin sought clarification about what specifically would be allowed into evidence,[13] but again

---

[13] This occurred at a hearing on Woodlin's Motion to Reconsider the motions court's decision to admit evidence of the 2010 conviction.

did not object to the scope of the evidence offered or otherwise alert the motions court to the potentially inadmissible details embedded within the transcript:

> DEF. COUNSEL: I will just be asking, whatever the Court's ruling, … for a little bit further direction … and I think [the State] agrees with me that some direction from the Court would be helpful. What information …, if the Court's going to permit it, what specifically is going to be able to be admitted as opposed to just saying information from the case can be admitted[?]
>
> THE COURT: Well, let's maybe clarify what exactly is the State seeking to introduce?
>
> STATE: What I had laid out in the [motion] for the [CJ §] 10-923 was the State's intent to introduce and use the transcript of the plea itself and that was introduced at the hearing. And I think probably the easiest way to proceed in that way is through the detective, who can provide testimony of his investigation itself, and then introduce the transcript of the plea. …
>
> THE COURT: When you say testimony of his investigation. How far down the rabbit hole are we going with that?
>
> STATE: I think I would only limit it to essentially what's contained within the transcript, … rather than simply introducing the transcript, rather having him summarize what [Woodlin pleaded] guilty to, which is the contents of his investigation.
>
> THE COURT: So basically it's introduction of the transcript and him testifying in terms of the facts that are alleged in the transcript.
>
> STATE: Yes.

*  *  *

| | |
|---|---|
| THE COURT: | Okay. [Counsel], do you have anything further to add? |
| DEF. COUNSEL: | No. It at least clarifies for me what it is the State's seeking. I'll re[-]object at the appropriate time, but I would ask the Court to make a ruling in limine or to reconsider its ruling in limine. |

* * *

| | |
|---|---|
| THE COURT: | All right. Well, … the Court's going to deny the request to reconsider. |

At trial, Woodlin repeatedly objected to the testimony of the investigating police officer as well as to the admission of both the certified copy of the conviction and the transcript of the guilty plea proceedings. But when the trial court sought to clarify that the transcript being offered had already been ruled admissible by the motions judge, Woodlin again failed to object to the scope of the evidence offered. Instead, Woodlin objected again only to the general admission of any evidence of the 2010 conviction. Indeed, the only basis Woodlin provided for his objection was his inability to cross-examine the witnesses, a basis he has abandoned here:[14]

| | |
|---|---|
| THE COURT: | Where are you going with this? |
| STATE: | Your Honor, this was the subject of the [CJ §] 10-923 hearing that we already had where the Court granted the State the ability to introduce the evidence that relates to the investigation from 2010 by way of a transcript of his actual plea and then the true test of his conviction. |
| THE COURT: | Okay. This was already ruled on? |
| STATE: | So it was already ruled on. There was a motion to reconsider that was also denied. |

---

[14] *See supra* n.9.

|  |  |
|---|---|
|  | I'm only limiting … the [investigating police officer's] testimony to the contents of the transcript which is what [Woodlin pleaded] guilty to. |
| THE COURT: | And that was the subject of the prior hearing -- |
| STATE: | Yes, it was -- |
| THE COURT: | -- before another judge? |
| STATE: | -- and it's to rebut the implication that the child victim is fabricating the allegation. |
| DEF. COUNSEL: | And I want to make this clear to this Court. … [N]either [Woodlin] nor I have ever had an opportunity to cross-examine the individual who is the alleged victim in this case. It never happened before. It didn't happen here. The alleged victim in that case is deceased. So just advising the Court I'm going to have to just keep saying I object a lot. |
| THE COURT: | All right. Overruled. |

Because Woodlin failed at both the motions stage and at trial to object to the scope of the evidence offered or otherwise raise the issue of redaction to the judge, we hold that he has waived this argument on appeal.[15]

---

[15] Woodlin also attempts to avoid waiver by asserting that a CJ § 10-923 hearing is more like a suppression hearing than a hearing on a motion *in limine* because the admissibility of the sexual propensity evidence is definitively decided before trial. As in the case of a suppression hearing, Woodlin argues, no additional objection at trial should be necessary. *See* MD. R. 4-252(h)(2)(C) ("If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, on the motion of a defendant and in the exercise of its discretion, grants a supplemental hearing or a hearing de novo and rules otherwise."). This argument, however, ignores two important points. *First*, Woodlin did not raise the issue of redaction or recommend redactions at the motions hearing either. And *second*, even in the case of a denial of a motion to suppress, defense counsel can, and should, still object at trial to inadmissible parts of an otherwise admissible item of evidence.

B.      Scope of the Details Admitted

Even if Woodlin had preserved his objection to the court's failure to redact the "salacious" details, we would find that the trial court did not abuse its discretion by admitting details about the 2010 conviction. We explain.

While the General Assembly clearly intended for evidence of the prior sexually assaultive behavior to be admissible, it did not tell us how much evidence. Woodlin argues that the General Assembly meant only for the jury to be informed of the fact of the prior conviction. The State, without specifying exactly how much evidence should be admitted, argues that the details admitted here were not unfairly prejudicial. While the precise contours must be decided on a case-by-case basis by circuit courts, we hold that it is insufficient merely to admit the fact of the prior conviction. Instead, we hold that circuit courts[16] must admit sufficient factual detail of the prior sexually assaultive behavior to allow the jurors to compare and contrast the current allegations with the prior sexually assaultive behavior to determine for themselves whether and to what extent the prior sexually assaultive behavior is probative—or not—as to whether the defendant committed the act for which they are on trial.

Because there are as yet no cases interpreting the scope of what is admissible under CJ §10-923, in coming to this determination we have looked for guidance to the closest

---

[16] We are careful not to assign this task more specifically to the judges at either the CJ §10-923(d) motions hearing or at trial. Rather, we expect that, as with motions *in limine*, a motions judge may, but is not required to, give preliminary guidance on what may or may not be admitted, subject to refinement at trial by the trial judge when confronted by the actual evidence.

analogies, the federal sexual propensity exceptions,[17] and other Maryland exceptions to the general prohibition against prior crimes evidence under Rule 5-404(b).[18] For instance, we think this case is analogous to *Cousar v. State*, in which we held, pursuant to Maryland Rule 5-404(b), that the detailed circumstances of a prior sexual assault were "reasonably necessary" to establish the relevance of that assault. 198 Md. App. at 511, 514 (internal citations omitted) (concluding that details like that the defendant "contacted [the victim] for sexually related activity, produced a gun, and demanded oral sex of [the victim] with the results of the defecation remaining in her mouth" were "reasonably necessary" to demonstrate the non-accidental nature of the charged sexual assault). Similarly, in *U.S. v. LeMay*, the Ninth Circuit Court of Appeals, in applying Federal Rule 414 said, "the relevance of the prior act evidence [is] in the details." 260 F.3d 1018, 1029 (9th Cir. 2001). In *LeMay*, the Ninth Circuit rejected the argument that the district court should have limited the prosecution to merely proving the fact of the defendant's prior conviction for rape, and instead held that testimony of an "emotional and highly charged nature" about the

---

[17] Federal Rules of Evidence 413 and 414 provide that in a criminal case in which a defendant is accused of a sexual assault or child molestation, a federal court may admit evidence that the defendant committed any other sexual assault or child molestation. FED. R. EVID. 413(a), 414(a).

[18] Rule 5-404(b) provides for exceptions to the general prohibition against evidence of other crimes, wrongs, or acts if the evidence is used for another purpose, "such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake or accident." MD. R. 5-404(b). As of 2019, this list now also includes the exception for evidence of prior sexually assaultive behavior (by reference to MD. R. 5-413, which adopted this exception into the Maryland Rules). Because the Court of Appeals saw fit to group these exceptions together, it is appropriate to look to the admission of other Rule 5-404(b) evidence for guidance.

defendant's conviction for "sexually abusing his young relatives, by forced oral copulation, while they were in his care" was "necessary to fill in the details that made the prior rape conviction relevant." *Id.* at 1029-30.

Here, too, for the jurors to be able to determine how probative Woodlin's 2010 conviction was of the likelihood that he sexually abused A.H. in 2019, they had to know something about the similarity or dissimilarity between the offenses. Some degree of detail was, therefore, necessary to establish a factual basis on which the jury could compare and contrast the current allegations with the prior sexually assaultive behavior. Moreover, were we to omit the potentially prejudicial details that establish the relevance of prior sexually assaultive behavior, we might, in fact invite the jury to assume the worst. Without details, jurors would be left to speculate as to the nature and circumstances of the offense and could draw all manner of conclusions. As in *LeMay* and *Cousar*, "[e]stablishing the simple fact of conviction" would not have been enough. *See id.*; *Cousar*, 198 Md. App. at 514.

For these reasons, we hold that even if Woodlin had properly preserved his objection to the scope of the evidence admitted at trial, the trial court did not abuse its discretion in admitting what Woodlin refers to as the "salacious" detail of the prior sexually assaultive behavior.[19]

---

[19] As noted in footnote 2, above, our review of the transcript from the guilty plea proceeding also revealed that the transcript referenced up to three other unrelated criminal charges against Woodlin: reckless endangerment, theft, and a violation of probation or parole. *See supra* n.2. There is no theory that would make this evidence admissible. It would generally be error for a trial court to admit such evidence and any such erroneous admission would be reversible unless this Court could declare a belief, beyond a reasonable doubt, that the error was harmless. *Hurst*, 400 Md. at 418. Woodlin, however, failed to bring this evidence to the attention of the motions court, the trial court, or this Court. Given

**CONCLUSION**

In summary, we hold that: (1) the trial court did not abuse its discretion in admitting evidence of Woodlin's 2010 conviction; and (2) Woodlin's argument that the court should have redacted the "salacious" detail was not properly preserved and, thus, waived, but also meritless, as jurors need sufficient detail to compare and contrast the offenses. For these reasons, we affirm Woodlin's conviction.

> **JUDGMENTS OF THE CIRCUIT COURT FOR WICOMICO COUNTY ARE AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

his failure to raise the issue, we do not reach the question of whether the trial court's error in admitting evidence of these three unrelated criminal charges was harmless or whether it would be grounds for reversal of his conviction.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0107s21cn.pdf